FILED
CLERK, U.S. DISTRICT COURT
1/18/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| UNITED STATES OF AMERICA, | CR No. 2:24-cr-00038-MWF |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1028A: Aggravated Identity Fraud; 18 U.S.C. §§ 981, 982 and 1029, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| PRENTISS WESTBROOK, and DAJUAN HASSAN, | |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. §§ 1341, 2(a), 2(b)]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefits program for the State of California.

2. On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act. As a result, Congress passed

the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

3.   Prior to the enactment of the CARES Act, to be eligible for UI benefits administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

4.   The CARES Act established a new program — Pandemic Unemployment Assistance ("PUA") — to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

5.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

6.   Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants

reported their total income for the 2019 calendar year on the application. The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7. A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits. The claimant was required to provide his/her name, Social Security Number, and mailing address. The claimant was also required to identify a qualifying occupational status and COVID-19-related reason for being out of work.

8. After it accepted an application for UI benefits, including an application submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses. The EBP debit card was mailed via the United States Postal Service from BofA to the claimant at the address the claimant provided as his/her mailing address on his/her UI benefits application.

B.  THE SCHEME TO DEFRAUD

9. Beginning no later than July 2020 and continuing through at least January 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendants PRENTISS WESTBROOK and DAJUAN HASSAN, together with others known and unknown to the Grand Jury, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material false and

fraudulent pretenses, representations, and promises, and the concealment of material facts.

10. The fraudulent scheme operated, in substance, as follows:

a. Defendants WESTBROOK and HASSAN and their co-schemers filed and caused to be filed with EDD fraudulent applications for UI benefits in the names of other persons, including persons who were incarcerated in California state prisons.

b. Specifically, defendant HASSAN, who was at all times relevant to the scheme incarcerated in a California state prison, would obtain personal identifying information of inmates, including the inmates' names, dates of birth, and social security numbers, and pass that information to defendant WESTBROOK using the prison phone system.

c. Defendant WESTBROOK and other co-schemers would also obtain personal identifying information of other individuals, including names, dates of birth, and social security numbers, in furtherance of the scheme.

d. Defendant WESTBROOK and his co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants had worked at qualifying jobs and were individuals whose employment had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

e. Defendant WESTBROOK and his co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants resided and had worked in the State of California,

4

including in Los Angeles County, within the Central District of California.

   f. By falsely stating that the named claimants had worked in the State of California, defendant WESTBROOK and his co-schemers falsely represented and caused to be falsely represented that the named claimants were eligible for UI benefits administered by EDD when, as defendants WESTBROOK and HASSAN and knew, the named claimants were not eligible for such benefits.

   g. As a result of the fraudulent UI benefits applications that defendants WESTBROOK and HASSAN and their co-schemers filed and caused to be filed, EDD authorized BofA to issue EBP debit cards in the names of the named claimants.

   h. To ensure that they received the UI benefits that were paid as a result of the fraudulent applications, defendant WESTBROOK and his co-schemers listed and caused to be listed on the applications for the UI benefits addresses to which they had access as the mailing addresses for each of the named claimants. Defendant WESTBROOK and his co-schemers knew that, by doing so, they would cause BofA to mail the EBP debit cards issued to the named claimants to these addresses, thereby enabling defendant WESTBROOK and his co-schemers to take possession of the EBP debit cards.

   i. After defendant WESTBROOK received the EBP debit cards issued as a result of the fraudulent scheme, defendant WESTBROOK and his co-schemers used the debit cards and caused the debit cards to be used to withdraw the UI benefits loaded onto the debit cards by making cash withdrawals at Automated Teller Machines ("ATMs") and by making purchases using those debit cards.

11. Through this scheme, defendants WESTBROOK and HASSAN and their co-schemers caused at least 42 fraudulent applications for PUA benefits to be filed with EDD, including 17 fraudulent applications in the names of inmates, resulting in losses to EDD and the United States Treasury of approximately $675,798.00, which sum includes $295,800.00 in CARES Act funds.

C. <u>USE OF THE MAILS</u>

12. On or about the dates set forth below, within the Central District of California and elsewhere, defendants WESTBROOK and HASSAN, and their co-schemers, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon:

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
|---|---|---|---|
| ONE | 07/16/20 | WESTBROOK, HASSAN | EBP debit card for an account in the name of inmate R.Q. ending in 4063 sent by U.S. Mail from BofA to 7710 S. Denker Avenue, Los Angeles, California 90047 |
| TWO | 08/05/20 | WESTBROOK, HASSAN | EBP debit card for an account in the name of inmate O.G. ending in 1245 sent by U.S. Mail from BofA to 6830 Crenshaw Boulevard, Los Angeles, California 90043 |
| THREE | 08/05/20 | WESTBROOK, HASSAN | EBP debit card for an account in the name of inmate R.R. ending in 5794 sent by U.S. Mail from BofA to 13605 S. Vermont Avenue, Apartment 35, Gardena, California 90247 |

| COUNT | DATE | DEFENDANT(S) | ITEM MAILED |
|---|---|---|---|
| FOUR | 08/27/20 | WESTBROOK | EBP debit card for an account in the name of J.G. ending in 3214 sent by U.S. Mail from BofA to 1721 W. 43rd Street, Los Angeles, California 90062 |
| FIVE | 08/28/20 | WESTBROOK | EBP debit card for an account in the name of S.A. ending in 5241 sent by U.S. Mail from BofA to 13605 S. Vermont Avenue, Apartment 35, Gardena, California 90247 |

COUNTS SIX AND SEVEN

[18 U.S.C. §§ 1028A(a)(1), 2(a), 2(b)]

[DEFENDANT WESTBROOK]

13. The Grand Jury realleges paragraphs 1 through 12 of this Indictment here.

14. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant PRENTISS WESTBROOK, and others known and unknown to the Grand Jury, each aiding and abetting the other, knowingly used, and willfully caused to be used, without lawful authority, the means of identification set forth below that defendant WESTBROOK knew belonged to another person, during and in relation to the offense of Mail Fraud, a felony violation of Title 18, United States Code, Section 1341, as alleged in the following counts of this Indictment:

| COUNT | DATE | MEANS OF IDENTIFICATION | FELONY VIOLATION |
|---|---|---|---|
| SIX | 08/27/2020 | Name and Social Security Number of J.G. | COUNT FOUR |
| SEVEN | 08/28/2020 | Name and Social Security Number of S.A. | COUNT FIVE |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Five of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

## FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of the defendant's conviction of the offenses set forth in any of Counts Six and Seven of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

   (b) Any personal property used or intended to be used to commit the offense; and

   (c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

　　/s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

IAN V. YANNIELLO
Assistant United States Attorney
Chief, General Crimes Section

HAOXIAOHAN CAI
Assistant United States Attorney
General Crimes Section